UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GINUTIS SIPAS, et al.,                          :

                Plaintiffs,      :

    - against -                             :

SAMMY'S FISHBOX, INC, et al.,                  :

                Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #·_____
DATE FILED: APR 2 4 2006

05 Civ. 10319 (PAC)

MEMORANDUM OPINION
& ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs, current and former parking lot attendants at lots servicing Defendants'

restaurants on City Island, Bronx, New York ("City Island"), filed this "wage-and-hour" claim

under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and New York

Labor Law on December 8, 2005. Plaintiffs seek unpaid minimum wages and "spread of hour"

wages for days worked in excess of ten hours pursuant to the FLSA, and return of gratuities

confiscated by Defendants in violation of New York Labor Law § 196-d. (First Am. Compl. ¶¶ 1-

2.) Plaintiffs Ginutis Sipas and Thomas Otero also seek back pay and liquidated damages

because Defendants allegedly terminated their employment in retaliation for their retaining

counsel in this action.

Defendants, five corporate entities and one individual, own and operate five

seafood restaurants on City Island, for whose benefit the parking lots at which Plaintiffs work are

operated. (Id. ¶ 18-22.) Defendant Samuel Chernin ("Chernin") is the President and majority

shareholder of all of the Defendant corporate entities. (Id. ¶ 13.) Claiming not to own the lots at

which restaurant patrons parked, Defendants filed a Third-Party Complaint on February 8, 2006 against certain named individuals that Defendants allege own the lots and employ the Plaintiffs.

After multiple amendments to the parties' pleadings, Plaintiffs now move to proceed as a collective action pursuant to Section 216(b) of the FLSA. The only question raised by Plaintiffs' motion is whether Plaintiffs have set forth sufficient facts establishing that the named Plaintiffs and potential collective action Plaintiffs are "similarly situated." The Court finds that they have made this showing, and accordingly allows this case to proceed as a collective action.

## DISCUSSION

Section 216(b) of the FLSA authorizes an employee to sue his employer for unpaid overtime compensation and liquidated damages on behalf of himself and other "similarly situated" employees. 29 U.S.C. § 216(b). Unlike a Rule 23 class action, in which potential plaintiffs must opt out of the action in order not to be bound by the final settlement or judgment, employees must opt in to an FLSA collective action by filing a written consent. Id. To facilitate the opt-in process, a court has the discretion to authorize notification to "similarly situated" potential plaintiffs and to direct an employer defendant to disclose the names and addresses of those potential plaintiffs. See Patton v. Thompson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005) (quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989) and Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1979)); accord Masson v. Ecolabs, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005); Vaicaitiene v. Partners in Care, Inc., No. 04 Civ. 9125, 2005 WL1593053, at *2 (S.D.N.Y. July 6, 2005). This Circuit encourages the sending of notice to "similarly situated" individuals, as doing so

"comports with the broad remedial purpose of the [FLSA], . . . as well as with the interest of the courts in avoiding multiplicity of suits." Braunstein, 600 F.2d at 336; see also Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[C]ourts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management.").

The requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to the certification of a collective action under the FLSA. Therefore, "no showing of numerosity, typicality, commonality and representativeness need be made." Masson, 2005 WL 2000133, at *13 (quoting Foster v. Food Emporium, No. 99 Civ. 3860, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)). At this prediscovery stage in the litigation, the inquiry "is less stringent than the ultimate determination that the class is properly constituted." Masson, 2005 WL 2000133, at *13 (quoting Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)). "The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Hoffman, 982 F. Supp. at 261. Plaintiffs meet this burden by 'making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id.; see also Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (noting that the plaintiffs need show only "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination"). Thus, "the merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to

3

be approved and disseminated."[1] Masson, 2005 WL 2000133, at *13.

Plaintiffs have met their minimal burden. The Plaintiffs Complaint and supporting Affidavits tell the following story[2]: The eight named Plaintiffs all work (or previously worked) as parking attendants at lots located on City Island that serviced Defendants seafood restaurants. Their primary responsibility was to park and retrieve cars for patrons of Defendants' restaurants. All the Plaintiffs were required to wear the same uniforms, attend the same semi-annual meetings to discuss problems with parking operations, and answer to the same supervisors. In addition, all the Plaintiffs received no hourly wages and were compensated solely through tips, and all the Plaintiffs who remained in Defendants employ after June 2004 were required to pay Defendants $5.00 per shift, out of their tips.

Further, Plaintiffs' Affidavits allege that "approximately seventy-five other individuals," not including the named Plaintiffs, worked in the same capacity, as parking attendants at the identified lots on City Island, since approximately August 1, 1999. At this early stage, there is no evidence of record to suggest that these seventy-five other individuals were treated differently than the named Plaintiffs. Thus, the Court finds that the named Plaintiffs have

---

[1] If the Court finds this minimal burden satisfied, the court may conditionally certify the class. Later in the litigation, after the bulk of discovery is complete, the defendant may move to "decertify" the collective action. See Masson, 2005 WL 2000133, at *14. The "similarly situated" question is then revisited, but this time based on the more complete record produced through discovery. See id. If the Court finds that the plaintiffs are not similarly situated, the Court will decertify the collective action and the claims of the opt-in plaintiffs will be dismissed before trial. Id. If the Court finds that the plaintiffs are similarly situated, the collective action will proceed to trial. Id. Because Plaintiffs move for certification before discovery, only the first phase of the inquiry applies at this time.

[2] All facts are culled from Plaintiffs' First Amended Complaint, Affidavit of Plaintiff Ginutis Sipas, Affidavit of Plaintiff Vytautas Sipas, and Affidavit of Plaintiff David Marquez.

4

demonstrated a factual nexus between their situation and the situation of other current and former parking attendants at the subject lots sufficient to make a preliminary determination that they are all "similarly situated."

Defendants argue that the Court should not certify a collective action because Defendants never employed any of the Plaintiffs or owned the parking lots at which the Plaintiffs worked. (Chernin Decl. ¶¶ 15, 17, 19.) Rather, the subject parking lots were operated as a "partnership" by the Third-Party Defendants, and neither Chernin nor the restaurant Defendants had any role in employing or supervising the Plaintiffs.

Of course, Plaintiffs vigorously dispute Defendants' lack of ownership, arguing that Defendant Chernin owned the parking lots at issue and employed the Plaintiffs to work in them as attendants. In fact, Plaintiffs allege that Chernin, in his capacity as the owner and operator of the Defendants' restaurants, required the Plaintiffs "to purchase uniforms bearing the name and logo" of his restaurants, called occasional meetings to discuss parking operations, instructed the Plaintiffs on how to carry out their duties, and provided food to Plaintiffs free of charge during shifts. (Pls.' Affs. ¶ 9-15.) Further, Plaintiffs produce New York City Department of Finance records listing Chernin as the record owner of the lots. (Menken Reply Decl., Exs. B & C.)

Based on this record, there is substance to Plaintiffs' allegations of employment and ownership of the parking lots. Defendants are free to, and certainly will, contest these allegations, but at this early stage these factual disputes cannot serve as the basis for denying conditional certification of Plaintiffs' collective action.

CONCLUSION

Plaintiffs' request to proceed as a collective action for purposes of their claims under the FLSA is hereby GRANTED.[3]

To facilitate notice to potential members who may wish to opt in, the Defendants are ORDERED to immediately disclose to Plaintiffs the names, last-known addresses and telephone numbers of each individual who has worked as a parking attendant at the lots on City Island, Bronx, New York, from August 1, 1999 through the present.[4] If Defendants do not have such information, they are ORDERED to affirmatively identify the individual(s) in possession of this information and provide their names and addresses to Plaintiffs.

Plaintiffs proposed collective action notice is APPROVED. Plaintiffs are permitted to mail said notice to the individuals required to be disclosed by Defendants and to publish said notice in such local newspapers as determined by Plaintiffs.

Dated: New York, New York
April 24, 2006

SO ORDERED

*(signature)*

PAUL A. CROTTY
United States District Judge

---

[3] As Defendants correctly state in their opposition papers, the New York Labor Law and New York Minimum Wage Act do not contain a mechanism similar to the collective action. In order to proceed on behalf of similarly situated employees on a claim under New York law, Plaintiffs must first seek class action certification under Rule 23. See, e.g., Scholtisek v. Eldre Corp., 229 F.R.D. 381, 391-95 (W.D.N.Y. 2995); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351, 353-354 (S.D.N.Y. 1999). The motion before the Court sought only collective action status, and not certification as a class. Therefore, to the extent that Plaintiffs wish to proceed as a class action for purposes of their claims under New York law, Plaintiffs must bring a new motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3).

[4] While the Court recognizes that the statute of limitations for FLSA actions is ordinarily two or three years, see 29 U.S.C. § 255, the Court does not currently have enough facts to rule out equitable tolling. See Jacobsen v. Stop & Shop Supermarket Co., No. 02 Civ. 5915, 2004 WL 1918795, at *2 (S.D.N.Y. Aug. 27, 2004).